**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02435-WJM

NATIONAL ASSOCIATION OF INVESTORS CORPORATION, a Michigan non-profit corporation,

      Plaintiff

v.

BIVIO, Inc., a Delaware corporation
BIVIO SOFTWARE ARTISANS, Inc., a Colorado corporation,
ROBERT NAGLER, an individual,

      Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

Plaintiff National Association of Investors Corporation ("Plaintiff") brings this action against Defendants Bivio, Inc., Bivio Software Artisans, Inc., and Robert Nagler (collectively "Defendants") alleging various state law contract claims as well as an anti-trust claim under the Sherman Act, 15 U.S.C. §§ 1 *et seq*.  (Am. Compl. (ECF No. 38) at 6-9.)  Before the Court is Defendants' Motion to Dismiss the Amended Complaint ("Motion").  (ECF No. 40.)  For the reasons set forth below, the Motion is granted.

## I.  LEGAL STANDARD

Defendants move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1), (3), (6), and (7).  However, the Court's ruling in this Order examines only Defendants' arguments with respect to whether Plaintiff has stated a claim upon which relief could be granted, as required by Rule 12(b)(6).  Therefore, the only relevant legal standard is that for a Rule 12(b)(6) motion.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). Plausibility in this context "must refer to the scope of the allegations in a complaint—*i.e.* if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48. (10th Cir. 2008). The "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* This requirement of plausibility "serves not only to weed out claims that do not have a reasonable prospect of success, [but also to] provide fair notice to defendants of the actual grounds of the claim against them." *Id.* "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

## II.  FACTUAL BACKGROUND

The relevant facts, as pled in Plaintiff's Complaint, are as follows:

In March 2010, Plaintiff brought suit against Defendants in this Court for breach

of contract alleging that Bivio breached a 2006 Strategic Alliance Agreement (the

"Original Action").  (Am. Compl. ¶ 11.)  On August 2, 2011, the parties attended a

settlement conference with U.S. Magistrate Judge Michael E. Hegarty.  (*Id.* ¶ 13.)  At

the settlement conference, the parties agreed to resolve their dispute and signed a

"Material Terms of Settlement Agreement" contract ("MTSA").  (*Id.*)  Paragraph 7 of the

MTSA stated: "The parties agree to a mutual nondisparagement clause."  (Compl. (ECF

No. 1) Ex. A.)  Paragraph 8 of the MTSA provided that the parties shall cooperate in the

preparation of a formal settlement agreement.  (Am. Compl. ¶ 15.)  The Original Action

was dismissed based on this settlement.  (*Id.* ¶ 23.)

After the settlement conference, the parties attempted to negotiate the terms of

the formal settlement agreement.  The parties exchanged drafts and agreed on all

terms except the text of the non-disparagement clause.  (*Id.* ¶ 17.)  The failure to agree

on a non-disparagement clause has prevented execution of the formal agreement.  (*Id.*

¶ 21.)

On September 15, 2011, Plaintiff filed a Complaint bringing the following claims:

(1) breach of contract; (2) declaratory relief; (3) intentional interference with contract; (4)

attempted monopolization in violation of Section 2 of the Sherman Act; and (5)

conspiracy to restrain trade in violation of Section 1 of the Sherman Act.  (Compl. pp. 5-

9.)  Plaintiff's Complaint sought damages in the amount of $160,000 (the amount

Defendants were to pay pursuant to the terms of the MTSA), a declaration that

Defendants' obligations under the MTSA are binding, punitive damages against

Defendant Nagler, and costs and attorney's fees.  (*Id.* at 9.)

Defendants filed a Motion to Dismiss on October 23, 2011.  (ECF No. 6.)  The Court granted the motion in part pursuant to Rule 12(b)(6), and dismissed Plaintiff's claims under the Sherman Act without prejudice, with leave to file an amended complaint.  (ECF No. 37.)  Plaintiff filed its Amended Complaint on May 29, 2012, alleging the same claims as in the original Complaint, with the exception of conspiracy to restrain trade in violation of Section 1 of the Sherman Act, which was removed from the Amended Complaint.  (*See* Compl. pp. 8-9.)  Plaintiff seeks the same relief as in the original Complaint, as well as a declaration that Defendants' construction of the non-disparagement clause violates Section 1 of the Sherman Act.  (*Id.* at 9; Am. Compl. at 9.)

On September 12, 2011, shortly before this action was filed, Defendants filed a declaratory judgment action regarding the parties' obligations under the MTSA in Boulder County District Court against Plaintiff and ICLUB, a wholly-owned subsidiary of Plaintiff who was a party to the Original Action.  (ECF Nos. 6-1, 42-1.)  Plaintiff filed an answer and a counterclaim in the Boulder County action on October 24, 2011.  (ECF No. 42-2.)  The Boulder County District Court issued a Setting Order on January 30, 2012, setting the action for trial during the week of January 21, 2013.  (ECF No. 42-3.)

### III.  ANALYSIS

Defendants raise the following arguments in the Motion: (1) Plaintiff's Amended Complaint fails to state a claim for a violation of the Sherman Act; (2) Plaintiff's Amended Complaint fails to establish that its claims meet the $75,000 minimum for federal diversity jurisdiction; (3) Plaintiff's Amended Complaint fails to state a claim involving a federal question sufficient to confer federal subject matter jurisdiction; (4)

-4-

Plaintiff's Amended Complaint fails to name an indispensible party, ICLUB, whose participation would destroy diversity jurisdiction; (5) the Court should abstain from exercising its jurisdiction over this matter pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976); and (6) Plaintiff's Amended Complaint fails to state a claim for its state law causes of action.  (ECF No. 40 at 2-11.)

Below, the Court will address the first and fifth of Defendants' arguments. Because this analysis is dispositive of the case, the Court does not reach the remaining arguments.

**A.     Sherman Act Claims**

Plaintiff's Amended Complaint brings an anti-trust claim for Attempted Monopolization under Section 2 of the Sherman Act.  (Am. Compl. at pp. 8-9.) Although Plaintiff's Amended Complaint no longer includes a claim for Conspiracy to Restrain Trade in Violation of Section 1 (*see* Compl. at 7-8), Plaintiff's request for declaratory relief in the Amended Complaint implicates Section 1 because it seeks a declaration that Defendants' preferred construction of the anti-disparagement clause violates Section 1.  (Am. Compl. at 9.)  Therefore, the Court will address each of these claims in turn below.

1.     Section 2: Attempted Monopolization

Plaintiff alleges that Defendants violated Section 2 of the Sherman Act by attempting to force Plaintiff to enter into a settlement agreement that contained an anti-competitive non-disparagement clause.  (Am. Compl. ¶¶ 45-49.)

Section 2 of the Sherman Act prohibits monopolization or attempted monopolization of any part of interstate trade or commerce.  15 U.S.C. § 2.  In this circuit, a plaintiff bringing an attempted monopolization claim must allege the following: (1) that the defendant has engaged in predatory or anti-competitive conduct; (2) with a specific intent to monopolize; and (3) a "dangerous probability" of achieving monopoly power.  *Christy Sports LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1992 (10th Cir. 2009).  The third element requires consideration of "the relevant market and the defendant's ability to lessen or destroy competition in that market."  *Id.*

        a.    *Anti-competitive Conduct*

Plaintiff's Amended Complaint alleges that Defendants' insistence upon a non-disparagement clause that prohibits truthful disparagement constitutes anti-competitive conduct.  (Am. Compl. ¶ 19.)  The non-disparagement clause at issue includes the following language:

> Non-Disparagement.  No Party, nor its officers, directors, employees, agents or affiliates, shall at any time directly or indirectly, orally, in writing or through any other medium, make any statements, assertions or allegations concerning any other Party or its products which are disparaging *and false.  This paragraph is not intended to restrict honest and fair competition between bivio and ICLUB.*

((*Id.* at ¶ 18) (emphasis added to indicate disputed language).)  When Plaintiff insisted upon adding the words "and false" to qualify the prohibited disparaging statements, Defendants refused to accept the reference to falsity and instead added the final sentence to the non-disparagement clause, clarifying that the clause was "not intended to restrict honest and fair competition between [B]ivio and ICLUB."  (*Id.*)

Defendants argue that they foreclosed any possibility of anti-competitive

inference when they added the exemption for fair competition between Bivio and ICLUB.  (ECF No. 40 at 3.)  Thus, Defendants' proposed language would not prohibit truthful comparative advertising by ICLUB where it falls within the scope of "honest and fair competition," and the parties' "dispute only relate[s] to disparagement *other than* that which occurred as part of competition within the Relevant Market."  (ECF No. 42 at 6 (emphasis in original).)  Because NAIC is not a direct competitor in the Relevant Market, Defendants argue that their prohibition on disparaging comments by NAIC "cannot possibly enable Bivio (or Bivio and ICLUB together) to control prices and exclude competition in the Relevant Market."  (ECF No. 40 at 4-5.)

However, Plaintiff argues that Defendants' proposed disclaimer fails to include NAIC's truthful disparaging statements in the service of "honest and fair competition," and therefore would not protect NAIC's statements from violating its terms.  (Am. Compl. ¶ 18.)  Plaintiff alleges that this restriction has an anti-competitive effect because "NAIC's position in the market is such that its ability to influence [its members] . . . has a direct level on the level of competition in the Relevant Market."  (*Id.* at ¶ 19.)  NAIC's inability to engage in truthful disparaging advertising about Bivio would, Plaintiff alleges, "unduly limit competition," particularly in light of the fact that "NAIC wholly owns a direct competitor to Bivio i.e. ICLUB."  (*Id.* at ¶ 19.)  Further, Plaintiff alleges that the anti-disparagement dispute "has [already] caused a chill in competition because NAIC and ICLUB have been reluctant to aggressively compete to the same extent they would have in the absence of such dispute."  (*Id.* at ¶ 24.)

In its Opposition to the Motion, Plaintiff cites a Federal Trade Commission ("FTC") policy statement regarding non-disparagement agreements (ECF No. 41 at 2-

3).  The FTC policy statement indicates that truthful, non-deceptive comparative advertising "is a source of important information to consumers[,] . . . encourages product improvement and innovation, and can lead to lower prices in the marketplace." (*Id.* at 3.)  Further, the FTC statement indicates that non-disparagement clauses "may operate as a restriction on comparative advertising," and that "the Commission will continue to scrutinize carefully restraints upon [comparative advertising]."  (*Id.*)  While the FTC policy statement is not dispositive, it lends plausibility to Plaintiff's allegation that Defendants' attempt to restrict truthful comparative advertising by NAIC was anti-competitive.

Therefore, the Court finds that Plaintiff has alleged anti-competitive conduct by Defendants sufficient to satisfy the first element of an attempted monopolization claim.

b.    *Specific Intent to Monopolize*

In order to state a claim for attempted monopolization, Plaintiff must also allege that Defendants had the specific intent to form a monopoly.  "While the completed offense of monopolization under § 2 demands only a general intent to do the act, . . . a specific intent to destroy competition or build monopoly is essential to guilt for the mere attempt now charged."  *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 626 (1953) (internal quotation omitted); *see also Shoppin' Bag of Pueblo, Inc. v. Dillon Cos., Inc.*, 783 F.2d 159, 163-64 (10th Cir. 1986) ("[M]onopoly power is correctly defined in this circuit as the ability to control prices *and* exclude competition.") (emphasis in original).

The Amended Complaint states that Defendants "attempted to force NAIC to enter into an unlawful agreement to limit competition," and that such an attempt

"constituted an attempt to establish or maintain a monopoly or joint monopoly." (Am. Compl. ¶ 48.)  However, Plaintiff does not expressly allege that Defendants acted with the intent to monopolize.  Rather, Plaintiff's Opposition to the Motion argues that "specific intent can be inferred from the facts and circumstances," because Defendants' conduct restricts NAIC's comparative advertising, and "truthful marketing and comparative advertising is an important part of competition."  (ECF No. 42 at 2.)

Plaintiff's reliance upon inference to establish intent is not misplaced, as courts have held that "[o]ften no direct evidence of specific intent exists and inferences from conduct are necessary."  *Shoppin' Bag of Pueblo, Inc.*, 783 F.2d at 163 (citing *William Inglis v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1029 (9th Cir. 1981) (referring to "conduct [that] is also the sort from which specific intent can be inferred")).  At the pleading stage, all that is required is that Plaintiff allege facts from which it can plausibly be inferred that Defendants had the requisite intent, not that Plaintiff provide evidence proving such an intent, which evidence may well be supplied via inference.

Plaintiff's Amended Complaint alleges that Defendants intended to force Plaintiff into an anti-competitive agreement (Am. Compl. ¶ 48), and it can be inferred that Defendants intended thereby to gain a competitive advantage.  Plaintiff's quotation from the Federal Trade Commission policy statement regarding non-disparagement agreements, stating that "comparative advertising . . . can lead to lower prices in the marketplace" (ECF No. 41 at 2-3), permits the inference that Defendants' attempt to restrict such comparative advertising by NAIC was an attempt to control prices.

However, neither the Complaint nor the Amended Complaint contains an allegation or plausible inference that Defendants acted with *an intention to form or*

*maintain a monopoly*, that is, both to control prices and exclude competition.  Rather, Plaintiff alleges only that Defendants intended to form a contract that would have anti-competitive effects on the Relevant Market.  Plaintiff's failure to allege the requisite specific intent defeats its ability to state a claim for attempted monopolization.  *See Times-Picayune Pub. Co.*, 345 U.S. at 626-27 (finding no showing of specific intent where a publisher of a morning newspaper acquired an evening newspaper and operated it at a loss to gain competitive advantage, as publisher's actions were "predominantly motivated by legitimate business aims").  Plaintiff's conclusory statement that the attempt to form this anti-competitive agreement "constituted an attempt to establish or maintain a monopoly or joint monopoly" (Am. Compl. ¶ 48) is insufficient to plead specific intent to monopolize.  *See Times-Picayune Pub. Co.*, 345 U.S. at 626; *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992) ("The use of antitrust 'buzz words' does not supply the factual circumstances necessary to support [plaintiff]'s conclusory allegations.").

c.    <em>Dangerous Probability of Success</em>

Even if Plaintiff had properly pleaded the requisite intent, Plaintiff must still plead that Defendants had a dangerous probability of success in establishing or maintaining a monopoly.  The key inquiry in evaluating this element is "the power of the defendant in the market in which it competes."  *TV Commc'ns Network, Inc.*, 964 F.2d at 1025 (quoting *Perington Wholesale, Inc. v. Burger King Corp.,* 631 F.2d 1369, 1376 (10th Cir. 1979)).  To evaluate a defendant's market power, "[a]t the very least it must be shown how much of the relevant market a defendant controls."  *Shoppin' Bag of Pueblo, Inc.*,

783 F.2d at 161-62.

Plaintiff alleges that "Bivio and ICLUB possess over 80% of the Relevant Market," and that because Plaintiff's claim is based on a "joint monopolization theory," this sizeable majority of the market share is sufficient to allege a dangerous probability of success in monopolization.  (ECF No. 41 at 4.)  Defendants argue that Plaintiff's joint monopolization theory is "novel," has been disapproved by other courts and has not been adopted by the Tenth Circuit.  (ECF No. 40 at 5 (citing to *In re Denta/AirTran Baggage Fee Antitrust Lit.*, 733 F. Supp. 2d 1348, 1366-67 (N.D. Ga. 2010) (in turn citing cases from the Second, Seventh, and Ninth Circuits, as well as district courts in Florida and Pennsylvania)).)  Defendants further point out that "Plaintiff does not allege what share of the Relevant Market is possessed by Bivio" alone.  (*Id.* at 4.)

Plaintiff's allegation with regard to this element is self-contradictory.  Assuming the validity of a joint monopolization theory, if Plaintiff's argument is premised on a theory that Defendants are attempting joint monopolization with ICLUB, then Plaintiff has successfully pleaded an eighty percent market share, substantial enough to allege a dangerous probability of success.  However, under a joint monopolization theory, the anti-competitive effects of that monopoly would fall not on ICLUB, but on other market competitors, as ICLUB would be a member of the monopoly.  The Court's analysis of Defendants' alleged anti-competitive conduct, *supra* in III.A.1.a, relies upon Plaintiff's allegations of the negative effects on ICLUB and its ability to compete with Bivio.  As Plaintiff has not made any allegations regarding harm to competition with other participants in the Relevant Market, the joint monopolization theory defeats Plaintiff's ability to state a claim with regard to anti-competitive conduct.  *See Four Corners*

*Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1225 (10th Cir. 2009) ("After all, it is the protection of competition or prevention of monopoly[ ] which is plainly the concern of the Sherman Act, not the vindication of general notions of fair dealing.") (internal citations omitted).

Alternatively, since Plaintiff argues that ICLUB has been and will be harmed by Defendants' anti-competitive conduct (Am. Compl. ¶ 24)—suggesting that Defendants' conduct is an attempt to gain a competitive advantage over *all* competitors, including ICLUB—the Court construes Plaintiff's allegations as premised upon a sole monopolization theory. Under a sole monopolization theory, Plaintiff is required to allege the market share of the Defendants. *Shoppin' Bag of Pueblo, Inc.*, 783 F.2d at 161-62. As Defendants point out, the Amended Complaint does not contain any allegation as to Bivio's market share. (ECF No. 40 at 4.) Plaintiff cannot have it both ways. Either Plaintiff has properly pleaded dangerous probability of success but failed to plead anti-competitive conduct, or Plaintiff has pleaded anti-competitive conduct but failed to plead the probability of success. In either case, Plaintiff fails to state a claim for attempted monopolization.

Because the Court finds that Plaintiff's Amended Complaint fails to allege either that Defendants had a specific intent to monopolize or a dangerous probability of success, Plaintiff fails to state a claim for violation of Section 2 of the Sherman Act.

2.   <u>Section 1: Restraint of Trade</u>

Although Plaintiff's Amended Complaint no longer includes a claim under Section 1 of the Sherman Act, it adds a request for a declaration that Defendants' construction of the anti-disparagement clause violates Section 1. (Am. Compl. ¶ 37.)

-12-

Section 1 of the Sherman Act provides as follows:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States or with foreign nations, is declared to be illegal.

15 U.S.C. § 1.  While a literal reading of Section 1 would seem to prohibit all anti-competitive conduct as an illegal restraint of trade, the Supreme Court "has not taken a literal approach to this language."  *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). Rather, the Supreme Court "has long recognized that Congress intended to outlaw only unreasonable restraints."  *State Oil Co. v. Khan,* 522 U.S. 3, 10 (1997).

Defendants' Motion argues that Plaintiff has added the Sherman Act its claim for declaratory relief "in an apparent attempt to transform that claim into one 'arising under'" federal law in order to confer subject matter jurisdiction.  (ECF No. 40 at 7-8.) Without ruling on Defendants' jurisdiction arguments, the Court agrees that Plaintiff's reference to Section 1 in its claim for declaratory relief is unavailing.  In contrast to the initial Complaint (ECF No. 1), the Amended Complaint alleges no separate claim under Section 1.  (*See* ECF No. 38.)  Because a literal reading of Section 1 has been rejected by the Supreme Court, anti-competitive conduct does not necessarily violate Section 1, and no violation of Section 1 can be inferred solely from Plaintiff's allegations of anti-competitive conduct.

Further, the Court noted in its Order on Defendants' previous Motion to Dismiss (ECF No. 37) that an essential element of any Section 1 claim is a showing of concerted action.  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767-68 (1984).  The Section 1 claim in the initial Complaint alleged that Defendants'

insistence on a non-disparagement clause that would prohibit truthful marketing was "an attempted conspiracy to restrain trade—in violation of Section 1 of the Sherman Act." (Compl. ¶ 50.)  In contrast, the Amended Complaint no longer contains any reference to conspiracy except for one statement of "the attempted conspiracy by Bivio and Nagler" in its Section 2 claim.  (Am. Compl. ¶ 49.)  Just as the Court found in its previous order, the fact that Plaintiff alleges that the conspiracy was only attempted indicates that there was no actual concerted action.  (*See* ECF No. 37 at 8.)  Therefore, Plaintiff again has failed to allege facts making a Section 1 claim plausible.

Accordingly, the Court finds that the Amended Complaint states no claim under Section 1 of the Sherman Act.

3.   Leave to Amend

In its Opposition to the Motion to Dismiss, Plaintiff requests that it be granted leave to amend if the Court decides to grant the Motion.  (ECF No. 41 at 11.)  The Tenth Circuit has held that the Court "may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  A refusal to grant leave to amend is discretionary, and where "the denial rests on articulated reasons such as failure to cure deficiencies by previous amendments or futility of amendment, the district court's decision shall stand."  *TV Commc'ns Network, Inc.*, 964 F.2d at 1028.

Plaintiff was previously granted leave to amend its Sherman Act claims (ECF No. 37).  In view of Plaintiff's second failure to properly allege these claims, the Court finds

that it would be inequitable to allow Plaintiff a third bite at the apple, requiring

Defendants to once again incur substantial attorney's fees and costs in having to

address a Second Amended Complaint.  Because Plaintiff has failed to state a claim

under both Sections 1 and 2, the Court dismisses both Sherman Act claims with

prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**B.**   ***Colorado River* Doctrine**

The *Colorado River* doctrine governs whether a district court should stay or

dismiss a federal suit pending the resolution of a parallel state court proceeding.  *See*

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18

(1976).  Defendants move to dismiss Plaintiff's Amended Complaint, or, in the

alternative, to stay this case, because of the parallel state court proceeding in Boulder

County District Court (the "Boulder County Action").  (ECF No. 40 at 9.)

The Supreme Court has held that federal courts may not use any of the

abstention doctrines to refuse to exercise jurisdiction over a suit for non-equitable relief

that duplicates an ongoing state litigation.  *See Colorado River*, 424 U.S. at 813, 816-

818.  However, the Supreme Court also concluded that in certain circumstances,

judicial economy concerns and "reasons of wise judicial administration" weigh in favor

of "permitting the dismissal of a federal suit due to the presence of a concurrent state

proceeding" that will resolve the issues presented in the federal case.  *Id.* at 818-20.  In

many circumstances under the abstention doctrines, the Court is required to abstain;

however, whether to decline to exercise jurisdiction pursuant to *Colorado River* is

discretionary.  *Rienhardt v. Kelly*, 164 F.3d 1296, 1303 (10th Cir. 1999).

The Tenth Circuit has warned that the appropriate circumstances for deferral under the *Colorado River* doctrine are "considerably more limited than the circumstances appropriate for abstention" and must be "exceptional." *Id.* (quoting *Colorado River*, 424 U.S. at 817-18).  Accordingly, the Court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of the jurisdiction." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)).

The first step under the *Colorado River* analysis is determining "whether the state and federal proceedings are parallel." *Allen v. Board of Educ., Unified Sch. Dist.*, 436, 68 F.3d 401, 403 (10th Cir. 1995).  Suits are parallel if "substantially the same parties litigate substantially the same issues in different forums." *Id.*  A court examines "the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings, resolving any doubt in favor of exercising federal jurisdiction." *Id.*  If the cases are not parallel, the federal court must exercise jurisdiction. *Allen*, 68 F.3d at 403.

However, where the cases are parallel, the Supreme Court has identified several non-exclusive factors to consider in evaluating whether to decline jurisdiction, including: (1) whether the state or federal court has assumed jurisdiction over property in dispute; (2) the inconvenience to the parties of the federal forum; (3) avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious nature

of the litigation; (6) whether federal law provides the rule of decision; and (7) and the adequacy of the state court proceeding to protect the federal plaintiff's rights.  *See Colorado River*, 424 U.S. at 818; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 18-28. These factors are not a "mechanical checklist"; rather, the Court should "careful[ly] balanc[e] . . . the most important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994).

1.    Parallel Actions

Defendants' Motion argues that Plaintiff's claims "are already the subject of the prior Colorado Action" (ECF No. 40 at 9), and Defendants have attached to their Reply copies of their complaint and Plaintiff's answer and counterclaim filed in the Boulder County Action.  (ECF Nos. 42-1 & 42-2.)  The Court has reviewed Plaintiff's counterclaims in the Boulder County Action (ECF No. 42-2), and finds them to be nearly identical, word for word, to those in the Complaint filed here (ECF No. 1), with the exception of exchanging the Sherman Act claims for Colorado antitrust law claims. Thus, after the dismissal of the Sherman Act claims in this action, every one of Plaintiff's claims is included in its counterclaim in the Boulder County Action.  The two actions not only involve "substantially the same parties litigat[ing] substantially the same issues in different forums," *Allen*, 68 F.3d at 403; rather, the parties and issues are identical.

Thus, the Court finds that the actions are parallel and will proceed to an analysis of the various factors that must be weighed.

2.      Neutral Factors

Several of the factors to be considered are neutral in this case and can be

dispensed of as a preliminary matter.  No property here is in dispute; thus the first factor

is not applicable.  The relative convenience of the state and federal forums involved in

this case is neutral, as the two courthouses are geographically proximate, and no party

has suggested any inconvenience suffered as a result of litigating in one forum or the

other.  Nor is there anything in the nature of this litigation that makes it particularly

vexatious.  Therefore, as the Court must resolve any doubt in favor of exercising

jurisdiction, these factors weigh against abstention.

3.      Order of Obtaining Jurisdiction

When evaluating the order in which the courts obtained jurisdiction, "priority

should not be measured exclusively by which complaint was filed first, but rather in

terms of how much progress has been made in the two actions."  *Moses H. Cone Mem'l*

*Hosp.*, 460 U.S. at 3 (finding that "no substantial proceedings had taken place in the

state suit at the time of the District Court's stay order, whereas in the federal suit the

parties had taken most of the steps necessary to a resolution of the arbitrability issue.").

Here, the initial filings in the state and federal cases occurred within three days

of each other, and Plaintiff's answer and counterclaim was filed a month later.  (ECF

No. 42-1 Exs. A, B.)  However, because of the proceedings following Defendants' initial

Motion to Dismiss (ECF No. 6), including the dismissal of Plaintiff's Sherman Act claims

as alleged in the initial Complaint on May 15, 2012 (ECF No. 37), Plaintiff's subsequent

Amended Complaint filed May 29, 2012 (ECF No. 38), and the instant Motion to

Dismiss the Amended Complaint (ECF No. 40), this federal action has progressed

much more slowly than the state action, which had a trial date set for the week of January 21, 2013.  (ECF No. 42-3 Ex. C.)  Although the state court's January trial date has since been vacated, it is apparent that the proceeding in state court is substantially more advanced than that before this Court, where no answer has yet been filed pending the resolution of the instant motion.  Therefore, this factor weighs in favor of abstention.

       4.    <u>Avoiding Piecemeal Litigation</u>

The attempt to avoid piecemeal litigation is arguably the most essential element of the *Colorado River* doctrine, as it is directly connected to the goal to preserve judicial economy.  "It is well-established that 'federal courts have the power to refrain from hearing,' among other things, 'cases which are duplicative of a pending state proceeding.' This latter principle—the avoidance of duplicative litigation—is at the core of the *Colorado River* doctrine."  *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, No. 11-4062, 2013 WL 150221, at *7 (10th Cir. Jan. 15, 2013) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716-17 (1996)).

Here, after dismissal of Plaintiff's Sherman Act claims, every one of the remaining claims in the Amended Complaint is stated in Plaintiff's counterclaim in the Boulder County Action.  In addition, the Boulder County Action includes Defendants' claims as stated in their complaint, Plaintiff's affirmative defenses to Defendants' complaint, and Plaintiff's claims under Colorado antitrust law.  (*See* ECF Nos. 42-1 & 42-2.)  If this Court exercised jurisdiction to resolve all of Plaintiff's claims in the Amended Complaint, it would still leave Defendants' claims and Plaintiff's Colorado antitrust claims to be resolved in the Boulder County Action.  Further, as the Boulder

County Action is much more advanced than the federal case, the parties' dispute may be resolved much sooner if this Court abstains from exercising jurisdiction.  Therefore, this factor weighs heavily in favor of abstention to permit all of Plaintiff's and Defendants' claims to be resolved in one forum.

5.      Federal Rule and State Court Protection of Litigants' Rights

Finally, the Court must consider whether "'federal law provides the rule of decision on the merits,' and whether the state court proceedings adequately protect the litigants' rights." *D.A. Osguthorpe Family P'ship*, 2013 WL 150221 at *9 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23, 26-27).  With the dismissal of Plaintiff's Sherman Act claims, federal law no longer governs the merits of the remainder of Plaintiff's claims.  Plaintiff's remaining claims all arise under Colorado state law, making the Colorado state court an appropriate forum for their resolution—arguably a more appropriate forum than this Court.  There is no reason to believe that the state court will have any limitations in protecting Plaintiff's rights.  Therefore, these factors weigh in favor of abstention as well.

The Court is well-advised to be cautious in exercising its discretion, and to limit abstention under *Colorado River* to the rare exceptional case; yet such "circumstances, though exceptional, do nevertheless exist."  *Colorado River*, 424 U.S. at 818.  The Court finds that the factors pertinent to this case weigh strongly in favor of abstention under *Colorado River*, and that the state court is a more than adequate forum to resolve the parties' disputes.  Therefore, the Court concludes that this case is such an exceptional circumstance as to warrant abstention.

Having determined that abstention under *Colorado River* is appropriate, the Court must choose whether to stay the case pending the resolution of the state proceedings, or alternatively whether to dismiss.  Where it is possible that "the state court proceedings [may] not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action."  *Fox*, 16 F.3d at 1083.  In this case, because Plaintiff's federal claims have been dismissed and all of Plaintiff's other claims are included in the Boulder County Action, the availability of the federal forum need not be preserved.

Accordingly, the Court grants Defendants' Motion and dismisses Plaintiff's claims without prejudice.  The Court declines to rule on the remainder of the arguments raised in Defendants' Motion, as they are now moot.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss (ECF No. 40) is GRANTED;

2. Plaintiff's Sherman Act claims are DISMISSED with prejudice;

3. All other claims in Plaintiff's Amended Complaint (ECF No. 38) are DISMISSED without prejudice; and

4. The Clerk shall enter judgment for Defendants.  The Defendants shall have their costs.

Dated this 28th day of January, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge